1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7   FLOYD K.,[1]                           Case No. 20-cv-07774-SK

                   Plaintiff,
8
                                           **ORDER REGARDING CROSS-**
9         v.                               **MOTIONS FOR SUMMARY**
                                           **JUDGMENT**
10  KILOLO KIJAKAZI,
                                           Regarding Docket Nos. 17, 20
11                 Defendant.

12          This matter comes before the Court upon consideration of Plaintiff Floyd K.'s motion for

13  summary judgment and the cross-motion for summary judgment filed by Defendant, the

14  Commissioner of Social Security (the "Commissioner").  Pursuant to Civil Local Rule 16-5, the

15  motions have been submitted on the papers without oral argument.  Having carefully considered

16  the administrative record, the parties' papers, and relevant legal authority, and the record in the

17  case, the Court hereby GRANTS Plaintiff's motion and DENIES the Commissioner's cross-

18  motion for summary judgment for the reasons set forth below.  The Court REMANDS this matter

19  for further proceedings.

20                              **BACKGROUND**

21          On February 12, 2018, Plaintiff filed an application for a period of disability and disability

22  insurance benefits, alleging he was disabled starting on September 1, 2017.  (Administrative

23  Record ("AR") 15.)  On February 12, 2018, Plaintiff also filed a claim for supplemental social

24  security income.  (*Id.*)  Plaintiff alleged that he was disabled based on his post-traumatic stress

25  disorder, depression, high blood pressure, illiteracy, and anti-social behavior/anger flare ups.  (AR

26

27          [1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure
    5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case
28  Management of the Judicial Conference of the United States.

United States District Court
Northern District of California

78.)  Plaintiff was born on September 28, 1965, and was 51 years old, which is defined as an individual closely approaching advanced age, on his alleged disability onset date.  (AR 31.)

On December 16, 2019, Plaintiff, accompanied by counsel, testified at a hearing before the Administrative Law Judge ("ALJ").  (AR 15.)  Plaintiff and vocational expert Jose L. Chaparro both testified at the hearing.  (*Id.*)

The ALJ found that Plaintiff had the following severe impairments: asthma, chronic kidney disease, essential hypertension, degenerative disc disease of the spine, dysthymic disorder, major depressive disorder, post-traumatic stress disorder, stimulant use disorder, and mild to moderate intellectual disability.  (AR 18.)  The ALJ further found that Plaintiff did not have an impairment, or a combination of impairments, that meets or medically equals a listed impairment.  (*Id.*)

The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work, except that he must avoid concentrated use of hazardous machinery and concentrated exposure to unprotected heights.  (AR 26.)  The ALJ also found that Plaintiff has the following non-exertional limitations: he is limited to work that is simple, routine, and repetitive tasks; limited to low-stress work, which is defined as jobs requiring no more than occasional decision-making and no more than occasional changes in the workplace setting; he could have no interaction with the general public; and he could have only occasional interaction with co-workers. (AR 26.)  The ALJ found that Plaintiff could not perform his past work with these limitations but that, based on the testimony of the vocational expert, Plaintiff could perform the requirements of a Kitchen Helper (DOT 318.687-010), a Laboratory Equipment Cleaner (DOT 381.687-022), and a Hand Packager (DOT 920.587-018).  (AR 32-33.)  Therefore, the ALJ determined that Plaintiff was not disabled.  (AR 33.)

## ANALYSIS

### A.    Standard of Review.

A federal district court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g); *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable

United States District Court
Northern District of California

1    mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039

2    (9th Cir. 1995).  To determine whether substantial evidence exists, courts must look at the record

3    as a whole, considering both evidence that supports and undermines the findings by the

4    Administrative Law Judge ("ALJ").  *Reddick*, 157 F.3d at 720.  The ALJ's decision must be

5    upheld, however, if the evidence is susceptible to more than one reasonable interpretation.  *Id.* at

6    720-21.

7    **B.      Legal Standard for Establishing a Prima Facie Case for Disability.**

8         Disability is "the inability to engage in any substantial gainful activity" because of a

9    medical impairment which can result in death or "which has lasted or can be expected to last for a

10   continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether

11   a plaintiff is disabled, an ALJ applies a five-step sequential evaluation process.  *Bowen v. Yuckert*,

12   482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520.  The plaintiff bears the burden of establishing

13   a *prima facie* case for disability in the first four steps of evaluation.  *Gallant v. Heckler*, 753 F.2d

14   1450, 1452 (9th Cir. 1984).  However, the burden shifts to the Commissioner at step five.  *Tackett*

15   *v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

16        The five-step analysis proceeds as follows.  First, the claimant must not be engaged in

17   substantial gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe"

18   impairment.  20 C.F.R. § 416.920(c).  To be considered severe, a medical impairment must

19   significantly limit physical or mental ability to do basic work activities and must be of twelve

20   months duration or be expected to last for at least twelve months.  (*Id.*)  Third, if the claimant's

21   impairment meets or equals one of the impairments listed in Appendix I to the regulation (a list of

22   impairments presumed severe enough to preclude work), benefits are awarded without

23   consideration of the claimant's age, education, or work experience.  20 C.F.R. § 20 C.F.R.

24   404.1520(d).  Fourth, if the claimant's impairments do not meet or equal a listed impairment, the

25   ALJ will assess and make a finding about the claimant's residual functional capacity ("RFC")

26   based on all relevant medical and other evidence in the claimant's case record.  20 C.F.R. §

27   416.920(e).  The RFC measurement describes the most an individual can do despite his or her

28   limitations.  *Id.* § 404.1545(a)(1).  If the claimant has the RFC to perform past relevant work,

1   benefits will be denied.  *See id.* § 404.1520(f).  If the claimant cannot perform past relevant work,

2   the ALJ will proceed to step five.  *Id.*

3       At step five, the ALJ determines whether the claimant can make an adjustment to other

4   work.  20 C.F.R. § 404.1520(f)(1).  If the claimant can make the adjustment to other work, the

5   ALJ will find the claimant is not disabled; if the claimant cannot make an adjustment to other

6   work, the ALJ will find that the claimant is disabled.  *Id.* at 404.1520(e) and (g).  There are two

7   ways to make this determination: (1) by the testimony of an impartial vocational expert or by

8   reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2.  *Id.*

9   **C.**    **Weighing Medical Evidence.**

10      For benefits applications filed after March 27, 2017, such as Plaintiff's here, the Social

11  Security Administration's ("SSA") regulations and several Social Security Rulings regarding the

12  evaluation of medical evidence have been amended.  Prior to the current regulations, Ninth Circuit

13  law held that an ALJ must provide clear and convincing reasons to reject a treating or examining

14  physician's uncontradicted opinion and must provide specific and legitimate reasons to reject a

15  treating or examining physician's contradicted opinion.  *See Trevizo v. Berryhill*, 871 F.3d 664,

16  675 (9th Cir. 2017) (citations omitted).  However, under the current regulations, "the

17  Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this

18  includes giving controlling weight to any medical opinion.'"  *V.W. v. Comm'r of Soc. Sec.*, 2020

19  WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also P.H.

20  v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (citation omitted) (noting that the 2017

21  regulations eliminate the deference given to treating physicians for claims filed after March 27,

22  2017).  Some district courts have continued to apply the "clear and convincing" and "specific and

23  legitimate" standards as a "benchmark against which the Court evaluates [the ALJ's] reasoning."

24  *See, e.g.*, *Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10,

25  2020).  Others, including courts in this district, have not.  *See, e.g.*, *V.W.*, 2020 WL 1505716, at

26  *13; *Agans v. Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021).

27      Plaintiff appears to argue that the Court should still apply the standards adopted by the

28  Ninth Circuit which provide weight to medical opinions depending in part on whether they are

United States District Court
Northern District of California

4

offered by treating, examining, or non-examining (reviewing) professionals.  *See, e.g.*, *Ryan v. Commissioner of Social Security*, 528 F.3d 1194, 1198 (9th Cir. 2008).  However, regulatory agencies such as the SSA have broad authority to interpret the statutes they are charged with applying, as long as their regulations are not arbitrary and capricious or contrary to the statute, and courts must defer to validly adopted regulatory interpretations.  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *see also Barnhart v. Walton*, 535 U.S. 212, 222 (2002) (granting deference under *Chevron* to SSA interpretation of duration requirement for disability benefits.)  Because agencies are experts in the field, an agency's contrary interpretation will supersede a prior judicial construction unless the "prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

The Ninth Circuit's determination of the treating physician rule, and the corollary weight it attributed to treating, examining, or non-examining medical providers was not derived from the unambiguous terms of the statute.  *See Agans*, 2021 WL 1388610, at *6 (describing the source and evolution of the treating physician rule).  "The treating physician rule . . . was originally developed by Courts of Appeals as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003).  When the SSA later adopted regulations approving and formalizing use of the rule in the Social Security disability program, the agency noted that "[n]one of the circuit courts of appeals has held that its treating physician rule is required by the Act or Constitution." *See* Final Rules, Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 (1991).  Therefore, the SSA's new regulations regarding the examination of and weight given to medical providers supersedes the Ninth Circuit's treating physician rule.  The Court will address the ALJ's evaluation of the medical opinions in accordance with the new regulations.

Under the current regulations, the Commissioner must evaluate the persuasiveness of all medical opinions based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's

policies and evidentiary requirements." 20 C.F.R. § 416.920c(a), (c)(1)-(5).  "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'"  *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920(c)(1).  The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

Explanation of the consideration of the other factors is optional, except in cases where two or more opinions are equally well-supported and consistent with the record.  *Id.*  While the new Social Security "regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'"  *Christopher Charles A. v. Comm'r of Soc. Sec.*, 2020 WL 916181, at *2 (W.D. Wash. Feb. 26, 2020) (citing 20 C.F.R. §§ 404.1520c(a) and (b) (1), 416.920c(a) and (b) (1)).

Here, Plaintiff was examined by two psychologists – Aparna Dixit, Psy.D. and Laura Jean Catlin, Psy.D.  Plaintiff argues that the ALJ erred in crediting the opinions of Dixit over Catlin.

### 1.    Dixit.

Dixit examined Plaintiff on July 1, 2019, on referral from the California Department of Social Services, to assist with determining Plaintiff's disability status.  (AR 516.)  Dixit clinically interviewed Plaintiff, performed a mental status examination, reviewed the available medical records, and administered the Weschsler Adult Intelligence Scale-IV ("WAIS-IV"), the Weschler Memory Scale ("WMS-IV"), and the Trail Making Test ("TMT") A and B.  (AR 516.)  Dixit considered Plaintiff a reliable historian.  (AR 516.)  Plaintiff reported to Dixit that he is not

1   currently receiving psychotherapy/counseling, has never been psychiatrically hospitalized, never

2   attempted suicide, and has never been prescribed psychiatric medications.  (AR 517.)  In terms of

3   activities of daily living, Plaintiff reported being able to provide for his own grooming and

4   hygiene, perform household chores such as washing dishes, laundry and taking out the garbage, go

5   grocery shopping, drive, use public transportation, make simple microwave meals, and attend

6   appointments.  (AR 517.)

7        Dixit observed that Plaintiff was mildly disheveled with somewhat compromised hygiene

8   and grooming, had adequate eye contact and was able to complete his history form.  (AR 517.)

9   Dixit noted that Plaintiff was cooperative and pleasant and no overt signs of psychomotor

10  retardation or agitation, his speech was spontaneous and clear and did not have any word finding

11  difficulty.  (AR 517.)  Dixit also noted that Plaintiff did not have any signs of a formal thought

12  disorder – Plaintiff's thought process was linear and goal orientated, his thought content was

13  logical, he had no signs of hallucinations or delusions, no evidence of thought blocking, thought

14  stopping, or response latency, and no current suicidal or homicidal ideation.  (AR 517.)  Plaintiff's

15  mood was dysthymic with full range of affect and commensurate with his mood.  (AR 517.)

16       Dixit found that Plaintiff was alert and orientated to time, place, purpose, and person, and

17  assessed his working and short-term memory as intact.  (AR 517.)  Dixit further observed that

18  Plaintiff was able to perform some simple mathematical problems, do serial threes, and was able

19  to recite five digits forward and backward, he was able to follow a three-step command, able to

20  spell the word "forget" forward and backward, and was able to do serial 7s correctly, and that his

21  ability to think abstractly was unimpaired.  Plaintiff also demonstrated fair insight, was able to

22  give a good account of his strengths and deficits, and demonstrated adequate social judgment.

23  (AR 518.)

24       On the WAIS-IV test, Plaintiff scored 76 in verbal comprehension, 81 in perceptual

25  reasoning, 80 in working memory, and 81 in processing speed, and his full-scale IQ was 75.  On

26  the WMS-IV his auditory memory was 91 and his visual working memory was 88.  On the TMT,

27  Plaintiff took 41 seconds with zero errors on part A and took 101 seconds with zero errors on Part

28  B.  Dixit explained that Plaintiff's verbal comprehension and full scall IQ fell within the

United States District Court

Northern District of California

borderline impaired range and that his perceptual reasoning, working memory, and processing speed fell within the low average range. (AR 518.) On the WMS-IV, Plaintiff's auditory memory fell with the average range and his visual working memory fell within the low average range, which suggested intact auditory and mildly compromised visual working memory functioning. (AR 519.) On the TMT, Plaintiff's scores suggested mild impairment with sequencing, organizing and mental flexibility. (AR 519.) Dixit opined that these tests were valid because of Plaintiff's current cognitive functioning. (AR 518.)

Dixit concluded that Plaintiff did not have any symptoms of a thought disorder, did not exhibit any cognitive deficits upon examination, but did present with some symptoms suggesting a mood disorder. Dixit opined that Plaintiff would benefit from continued psychiatric treatment. (AR 519.) Based on reviewing Plaintiff's records, the mental status exam, cognitive testing, and clinical interview, Dixit found that Plaintiff would have no significant difficulty remembering and following simple instructions and his ability to retain and follow complex and detailed instructions appeared impaired. Dixit further opined that Plaintiff's ability to work with the public and to perform tasks requiring mental flexibility was mildly impaired, but his ability to work with supervisors and co-workers, to maintain persistence and pace over two-hour increments was not impaired. (AR 519.) Dixit noted that Plaintiff was able to sustain attention with no difficulty during the evaluation and that he retains the cognition to be able to manage funds independently. (AR 519.)

**2.     Catlin.**

On November 4, 2019, Catlin examined Plaintiff. Similar to Dixit, Catlin reviewed Plaintiff's records, performed a mental status examination, conducted a clinical interview, and performed the WAIS-IV. (AR 533.) Catlin did not perform the WMS-IV or the TMT, but did conduct the Repeatable Battery for the Assessment of Neuropsychological Status ("RBANS"), BDI Beck Depression Inventory, and the Burns PTSD Inventory. (AR 533.)

Catlin noted that Plaintiff approached her in a friendly and cooperative manner, was responsive to her, and appeared to be a credible historian. (AR 533.) Plaintiff reported that he has some difficulties performing his activities of daily living, including doing most of his household

United States District Court
Northern District of California

1   chores and with hygiene and basic self-car activities because he is homeless.  He also reported that

2   he has difficulty dealing with people he does not know and maintaining his friendships because of

3   his depression and that he has severe difficulty concentrating and remembering to do important

4   things without reminders.  (AR 534.)  He reported that he did not have any history of psychiatric

5   hospitalization or outpatient psychotherapy.  (AR 535.)  Plaintiff also reported that he wakes up

6   one to two hours early and cannot go back to sleep, does not have much energy to do much, and

7   has more difficulty concentrating than he used to, but that he has not had any changes in his

8   appetite.  (AR 536.).

9       Catlin observed that Plaintiff's arousal level during the interview was within normal limits,

10   his response time was average and he appeared alert and orientated.  Plaintiff was engaged in the

11   evaluation and was able to sustain his attention.  (AR 535.)  Catlin noted that Plaintiff was

12   adequately groomed and appropriately dressed, walked with an adequate gait, sat with an adequate

13   posture, and did not have any difficulty maintaining appropriate eye contact.  (AR 535-36.)

14   Plaintiff was talkative and animated when speaking.  He was tense, but was polite, open, earnest

15   and forthright.  Catlin further observed that Plaintiff's motor activity was normal in amount.

16   Plaintiff's mood was depressed and anxious and his affect was within normal limits and was

17   congruent with his mood.  (AR 536.)  Plaintiff did not report any suicidal thoughts or intent and

18   did not have any hallucinations and delusions.  Plaintiff's thought process was goal orientated and

19   logical, but his thought content evinced some preservation on negative thinking and paranoia.

20   (AR 536.)  Catlin found that Plaintiff's insight and judgment were limited.  (AR 536.)

21       On the RBANS, which is a brief neurocognitive battery, which measures immediate and

22   delayed memory, attention, language, and visuospatial skills, Plaintiff scored in the severely

23   impaired range.  (AR 536.)  She found that his immediate memory, delayed memory,

24   visuospatial/constructional, semantic fluency and picture naming, attention were all were severely

25   impaired.  (AR 536-37.)  On the Beck Depression inventory, Plaintiff reported feelings which

26   indicated severe depression.  (AR 537-38.)

27       Catlin diagnosed Plaintiff with severe major depressive disorder, PTSD, complex

28   bereavement, and mild to moderate intellectual disability.  (AR 538.)  On the WAIS-IV test,

1   Plaintiff scored 54 in verbal comprehension, 63 in perceptual reasoning, 50 in working memory,

2   and 50 in processing speed, and his full-scale IQ was 48, which were all in the extremely low

3   range.  (AR 539.)  Catlin opined that Plaintiff had indications of a mild intellectual disability and

4   noted that he has difficulty with reasoning, problem solving, planning, abstract thinking,

5   judgment, academic learning, learning from experience, and understanding and following

6   directions.  (AR 539.)  She noted that Plaintiff has adaptive deficit limits with communication,

7   social participation, and independent living.  (AR 539.)

8            Catlin opined that Plaintiff was mildly impaired in his ability to adhere to basis standards

9   of neatness and cleanliness, was extremely impaired in his ability to understand, remember, and

10  carry out detailed instructions, and was markedly impaired in his ability to: (1) understand and

11  remember short and simple work-like procedures; (2) carry out short and simple instructions; (3)

12  maintain adequate pace and persistence to perform simple tasks; (4) maintain his attention for two-

13  hour segments; (5) maintain regular attendance and be punctual within customary, usually strict

14  tolerances; (6) work in coordination with or in proximity to others without being unduly

15  distracted; (7) make simple work-related decisions; (8) complete a normal workday and workweek

16  without interruption from psychologically based symptoms; (9) maintain an adequate pace and

17  persistence while performing complex/detailed tasks; (10) perform at a consistent pace without an

18  unreasonable number and length of rest periods; (11) be able to ask simple questions or request

19  assistance; (12) interact appropriately with the general public; (13) adapt to changes in job routine;

20  (14) withstand the stress of a routine workday; (15) accept instruction and responding

21  appropriately to criticism from supervisors; (16) get along with co-workers or peers without

22  unduly distracting them or exhibiting behavioral extremes; (17) interact appropriately with co-

23  workers, supervisors, and public on a regular basis; (18) be aware of normal hazards and taking

24  appropriate precautions; (19) travel to unfamiliar places; and (20) use public transportation.  (AR

25  540-42.)  Catlin further opined that Plaintiff's impairments would cause him to be absent from

26  work more than four days a month.  (AR 542.)

27        **3.      ALJ's Assessment.**

28            In evaluating these two examining psychologist's findings and opinions, the ALJ gave

1    great weight to Dixit's opinions and rejected Catlin's opinions.  The ALJ found Dixit's opinions

2    persuasive because they were rendered after an in-person examination which documented some

3    abnormal findings with many normal findings.  (AR 20.)  Dixit's opinions were also supported by

4    standardized testing, which revealed some cognitive difficulty but no severe limitations.  (*Id*.)  The

5    ALJ further noted that Dixit's opinions were consistent with the longitudinal medical evidence in

6    the record, which documented normal mental status findings and no evidence of cognitive

7    dysfunction.  (AR 20.)  Plaintiff's reported activity level and independence in performing his

8    activities of daily living also supported Dixit's opinions.  (AR 20.)

9        Catlin examined Plaintiff in person and conducted standardized tests as well, but the tests

10   revealed very different results.  Although conducted only four months later, Plaintiff's full scale

11   IQ score on the WAIS-IV was 48, 27 points lower than his previous score.  His verbal

12   comprehension score was 54, which was 22 points lower, and his working memory index was 50,

13   which was 30 points lower.  (AR 21.)  These scores placed Plaintiff in the extremely low range of

14   cognitive ability.  (*Id*.)  The results from the RBANS also placed Plaintiff in the severely impaired

15   range, and the BDS test were interpreted as demonstrating severe depression.  (*Id*.)  The ALJ

16   discounted Catlin's opinions finding Plaintiff markedly impaired in nearly all aspects of mental

17   functioning and predicting that he would miss more than four days of work per month.  (AR 21.)

18   The ALJ found that Catlin relied primarily on the subjective reporting by Plaintiff as to the

19   severity of his symptoms.  (AR 22.)  Plaintiff takes issue with the ALJ's use of the word

20   "primarily," but there is no doubt that Catlin did consider Plaintiff's subjective reporting and that

21   Plaintiff reported more severe symptoms to Catlin than he had reported to Dixit four months

22   earlier.  While both Dixit and Catlin found Plaintiff to be a credible historian, as discussed below,

23   the ALJ determined that Plaintiff's testimony regarding his symptoms was not credible.[2]

24   Therefore, the ALJ was justified in discounting Catlin's opinions to the extent she relied on

25   Plaintiff's reported severe symptoms.

26

27           [2] The ALJ further discounted Catlin's opinions because they were rendered following a
     single examination of Plaintiff.  However, as Plaintiff notes, Dixit's opinions were also rendered
28   after a single examination.

1      The ALJ further noted that Catlin's opinions conflicted with her own findings on

2  Plaintiff's mental status examination, which documented many normal findings.  (AR 22.)

3  Plaintiff argues that the ALJ improperly ignored the abnormal findings, but the ALJ did not

4  characterize *all* of Catlin's findings as normal.  Instead, the ALJ noted that her findings that

5  Plaintiff was friendly, cooperative, responsive, a credible historian, alert, orientated, engaged, able

6  to sustain attention, logical and goal-orientated in his thought processes, and had appropriate eye

7  contact conflicted with Catlin's opinions that has marked impairments in nearly all aspects of his

8  mental functioning.  (AR 22.)  The ALJ's reasoning is supported by substantial evidence in the

9  record.  The ALJ further found that Catlin's test results showing "extremely low" cognitive

10  abilities, verbal comprehension, perceptual reasoning abilities, and full scale IQ were also

11  internally inconsistent with her opinion that Plaintiff had no more than a mild to moderate

12  intellectual disability.  (AR 22.)

13      The ALJ also noted that Catlin's opinions were inconsistent with the other longitudinal

14  medical evidence of record, which documents general normal metal status examination findings

15  and do not reflect any evidence of significant cognitive difficulties.  (AR 22 (citing AR 305-306

16  (Plaintiff was orientated to person, place, and time, with normal mood and affect and normal

17  behavior), 309 (same), 321 (Plaintiff denied fatigue and denied depression), 322 (neurological and

18  psychiatric exam findings that Plaintiff was orientated to person, place and time with normal

19  speech and affect), 442-43 (Plaintiff was orientated to person, place, and time, with normal mood

20  and affect and normal behavior), 497 (Plaintiff reported no depression, no sleep disturbances, and

21  no fatigue; exhibited good judgment, normal mood and affect, was active and alert, and his recent

22  and remote memory was normal), 525 (normal affect, speech, and comprehension), 526 (noting

23  Plaintiff can take public transportation), 566 (Plaintiff was alert and orientated), 577 (Plaintiff was

24  orientated to person, place and time and was not in distress), 586 (Plaintiff was orientated to

25  person, place, and time, with normal mood and affect and normal behavior), 598 (same), 606-07

26  (Plaintiff was orientated to person, place, and time, with normal mood and affect and was not in

27  distress), 614 (Plaintiff was calm and cooperative), 627 (Plaintiff was orientated to person, place,

28  and time, with normal mood and affect), 637 (Plaintiff was alert and orientated to person, place,

and time, with normal mood and affect and normal behavior), 647-48 (Plaintiff was alert and orientated to person, place, and time, with normal mood and affect).  Plaintiff accuses the ALJ of inaccurately describing Plaintiff's medical records but fails to cite to a single medical record which contradicts these above cited medical records or otherwise supports Catlin's findings other than her own report.  (Dkt. No. 17 at p. 10.)

The ALJ further notes that Catlin's opinions and test results were inconsistent with Plaintiff's hearing testimony and his own reporting on his function report.  (AR 22.)  Contrary to Catlin's finding of Plaintiff's severely impaired memory and cognitive impairments, Plaintiff did not demonstrate any difficulty remembering and recounting his impairments or work history. Additionally, the ALJ noted that Plaintiff's Function Report did not indicate that Plaintiff needed any assistance reading or completing the form.  (AR 22.)

However, Plaintiff asserts a challenge to Dixit's opinions that the ALJ failed to address – that the examination was too short to conduct the tests Dixit states were performed.  According to Plaintiff's testimony at the hearing, his appointment with Dixit lasted only thirty minutes.  (AR 65.)   Plaintiff testified as follows:

> Q.    How long did that appointment last?
> A.    Is that, that's the doctor or the –
> Q.    This was the mental health appointment.
> A.    Oh that last –
> Q.    Not the physical doctor.
> A.    – oh that one lasted for like thirty minutes.
> Q.    The one –
> A.    The mental, the mental health –
> Q.    – the mental health one –
> A.    Yeah.
> Q.    Lasted for thirty minutes.  And do you remember, did she just ask you questions, did she administer any tests?
> A.    She just asked a lotta different questions.

(AR 65 – 66.)

Plaintiff argues that administering the WAIS-IV would take between 67 and 100 minutes and that administering the Wechsler Memory Scale would take 75 to 77 minutes.  (Dkt. No. 17 at p. 9.)  Although the testimony at the hearing is ambiguous about which mental health appointment to which Plaintiff refers, Plaintiff makes a serious allegation in his motion for summary judgment

United States District Court
Northern District of California

that Dixit falsely represented that she had administered tests to Plaintiff.

The ALJ did not address that issue at all.  The ALJ has a duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (internal quotation and citation omitted).  The ALJ's duty to develop the record arises the evidence is ambiguous or inadequate.  *Id*.  The ALJ has this duty "to assure that the claimant's interests are considered." *Id*.  (internal quotation omitted).  This duty exists even where the claimant is represented by counsel.  *Id*.  The duty to develop the record is heightened when the claimant suffers from mental illness and may not be able to protect his own interests.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992)).  Due to the ambiguity regarding the length of Dixit's examination and what tests Dixit conducted, the Court finds it appropriate to remand to further develop the record on this limited issue.  In light of the Court's remand, the Court will not address Plaintiff's remaining arguments regarding his testimony and the ALJ's RFC determination because those issues are related to the ALJ's assessment of Dixit's and Catlin's opinions.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment.  The Court vacates the Commissioner's final decision and REMANDS for further administrative proceedings consistent with this order.  The Court shall issue a separate judgment, and the Clerk shall close this file.

**IT IS SO ORDERED**.

Dated: February 24, 2022

_____
SALLIE KIM
United States Magistrate Judge